Waldrep v. Kiewitt Mining Co. 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-039-CV

KIMBERLY WALDREP, INDIVIDUALLY AND
AS NATURAL PARENT AND NEXT FRIEND OF
HALEY WALDREP, A MINOR,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

KIEWIT TEXAS MINING COMPANY D/B/A
WALNUT CREEK MINING COMPANY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

 

From the 82nd District Court
Robertson County, Texas
Trial Court # 95-08-14,957-CV
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Proceeding pro se on appeal, Kimberly Waldrep, individually and as next friend of Haley
Waldrep, attempts to appeal a $2,500 judgment rendered in her favor in an automobile collision
case. Because Waldrep did not attempt to perfect her appeal within the proper time period and
no motion for an extension of time to perfect her appeal was filed, we conclude that we do not
have jurisdiction over her appeal.
Â Â Â Â Â Â According to the transcript that was received by this court on January 30, 1997, the final
judgment was signed by the trial court on July 31, 1996, and a motion for new trial was timely
filed on August 29, 1996.


 See Tex. R. Civ. P. 329b(a). Pursuant to Tex. R. App. P. 41(a)(1),
Waldrep had ninety days after July 31, 1996, i.e. until October 29, 1996, to perfect her appeal
from this judgment.


 Waldrep filed her perfection instrument, an affidavit of inability to pays the
costs of appeal, on November 13, fifteen days too late.


 See id. Thus, Waldrep has failed to
timely perfect her appeal.



Â Â Â Â Â Â The time period for perfecting an appeal is jurisdictional. Davies v. Massey, 561 S.W.2d
799, 800 (Tex. 1978); El Paso Sharky's v. Amparan, 831 S.W.2d 3, 5 (Tex. App.âEl Paso 1992,
writ denied). Because Waldrep failed to perfect her appeal within the jurisdictional time period
and failed to timely request an extension of time for perfection, we lack jurisdiction to entertain
this appeal. Id.; McDonald v. Newmyer, 775 S.W.2d 652, 653 (Tex. App.âHouston [1st Dist.]
1989, writ denied).
Â Â Â Â Â Â Therefore, we dismiss this cause for want of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM
Before Chief Justice Davis,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Justice Vance
Dismissed for want of jurisdiction
Opinion delivered and filed February 19, 1997
Do not publish



thought the Christian girls were killing the men.  He asked the
SheriffÂs Department for a badge because he believed he was the Âsupreme
commanderÂ of the world.

On the night of the offense, Ruffin
thought he was being hunted by Muslims.Â  He had heard voices laughing at him
and thought someone was stealing from him.Â  When Brown called out to him, he
told her to go away, accused her of trespassing, and fired some shots.Â  At some
point, he heard a helicopter and believed it was an Apache helicopter, with
missiles, being flown by his sister.Â  He thought Muslims were in the bushes, so
he fired in the direction of the voices.Â  He believed there were hundreds of
Muslims.Â  In the morning, he was surprised to see police vehicles in front of
his house.Â  After his arrest, Ruffin believed that the girls in the jail were
ÂwitchesÂ walking around with black teeth and laughing.

As the Court of Criminal Appeals noted,
ÂThe testimony proffered by Dr. Carter in this case is clearly relevant to the
issue of whether appellant intended to shoot at police officers during the
standoff or whether, because of a mental disease and the delusions that he
suffered as a result of that disease, he believed that he was shooting at
Muslims or some other figment of his mind.ÂÂ  Ruffin,
270 S.W.3d at 596.Â  Because CarterÂs testimony was
admissible to rebut the mens rea element of aggravated assault on a
public servant, the inherent probative value of the evidence was great.

We are not persuaded that the probative value
of this evidence is minimized by the lay testimony admitted at trial:

Although the trial judge permitted
numerous lay witnesses, including appellant himself, to testify to
Âobservational evidenceÂ concerning appellantÂs mental breakdown and delusions,
that evidence was never put into a mental-disease context or its
psychological significance explained.

Â 

Ruffin, 270 S.W.3d at 596-97 (emphasis added).Â  CarterÂs
testimony was needed to perform this very function.

While the testimony would certainly be
prejudicial to the StateÂs case, it would not be unfairly so in
proportion to its probative value.Â  See Vasquez v. State, 67 S.W.3d 229, 240 (Tex. Crim. App.
2002) (ÂTo violate Rule 403, it is not
enough that the evidence is ÂprejudicialÂ - it must be unfairly prejudicial.Â).Â  Rather than suggesting a decision on an
improper basis, CarterÂs testimony would place the evidence of RuffinÂs mental
state in the proper context and allow the jury to properly evaluate the
probative force of the evidence.Â  The evidence goes to the heart of the main
issue in the case: whether Ruffin committed the charged offense.Â  We cannot say
that the jury would have been confused, distracted, or misled by this
evidence.Â  See Ruffin, 270 S.W.3d at 595 (Expressing Âconfidence that our Texas judges and
juries are sufficiently sophisticated to evaluate expert mental-disease
testimony in the context of rebutting mens rea just as they are in
evaluating an insanity or mental-retardation claim.Â).

Finally, the record does not suggest
that the testimony would cause Âundue delayÂ or Âneedless presentation of
cumulative evidence.Â Â CarterÂs testimony is not cumulative of other testimony
at trial.Â  The bill of exception consumed approximately nineteen pages of the
record, and CarterÂs testimony at the punishment phase of trial consumed about
forty pages of the record.

In summary, the above factors favor
admission of the evidence.Â  The trial court abused its discretion by excluding
RuffinÂs proffered expert testimony under Rule 403.Â  

We now address whether Ruffin suffered
harm as a result of the exclusion of his evidence.Â  The State argues that harm
should be evaluated for non-constitutional error.Â  Citing Walters v. State,
247 S.W.3d 204 (Tex. Crim. App. 2007), Ruffin contends that harm should be
evaluated for constitutional error:

The erroneous exclusion of evidence
offered under the rules of evidence generally constitutes non-constitutional
error and is reviewed under Rule 44.2(b). Â The
exception is when erroneously excluded evidence offered by the criminal
defendant Âforms such a vital portion of the case that exclusion effectively
precludes the defendant from presenting a defense.Â Â Exclusion of evidence
might rise to the level of a constitutional violation if: (1) a state
evidentiary rule categorically and arbitrarily prohibits the defendant from
offering otherwise relevant, reliable evidence vital to his defense; or (2) a
trial courtÂs clearly erroneous ruling results in the exclusion of admissible
evidence that forms the vital core of a defendantÂs theory of defense and
effectively prevents him from presenting that defense. Â In such a case, Rule 44.2(a), the
standard for constitutional errors, would apply.

Â 

Walters, 247 S.W.3d at 219 (emphasis added).

Texas
does not recognize diminished capacity as an affirmative defense i.e., a
lesser form of the defense of insanity. Â Jackson
v. State, 160 S.W.3d
568, 573 (Tex. Crim. App. 2005).Â  It
is Âsimply a failure-of-proof defense in which the defendant claims that the
State failed to prove that the defendant had the required state of mind at the
time of the offense.ÂÂ  Id.Â  The standard for non-constitutional error
applies.Â  See Morales
v. State, 32 S.W.3d
862, 866-67 (Tex. Crim. App. 2000) (remanding case to the First Court of
Appeals to evaluate the exclusion of defendantÂs expert testimony for
non-constitutional error).

Â When evaluating harm from non-constitutional error
flowing from the exclusion of relevant evidence, we examine the record as a
whole, and if we are fairly assured that the error did not influence the jury
or had but a slight effect, we conclude that the error was harmless. Â Ray v. State, 178 S.W.3d 833, 836 (Tex. Crim.
App. 2005). Â Any error must be disregarded unless it affected RuffinÂs
substantial rights. Â See Tex. R.
App. P. 44.2(b).

The State argues that RuffinÂs
substantial rights were not affected because he was able to present similar
testimony from other witnesses, the record contains a wealth of evidence to
support the verdict,[1]
and the jury must have considered RuffinÂs diminished mental state, having assessed
ten years in prison for each count.[2]
Â 

Whether Ruffin knew he was shooting at
law enforcement officers was central to the case.Â  The lay testimony of RuffinÂs mental
state amounts to Âobservational evidenceÂ that was Ânever put into a
mental-disease context or its psychological significance explained.ÂÂ  Ruffin, 270 S.W.3d at 597.Â  The jury did not have the opportunity to hear CarterÂs
testimony, which was relevant to his failure-of-proof defense, and to evaluate its
credibility in addition to other evidence presented at trial.Â  

In Morales v. State, No. 01-99-00457-CR, 2001 Tex. App. LEXIS 3219Â (Tex. App.ÂHouston [1st Dist.] May 17, 2001, no pet.) (not designated for publication),
Morales was charged with
felony driving while intoxicated.Â  See Morales,
2001 Tex. App. LEXIS 3219, at *1.Â  Morales
called an acquaintance who testified that he and Morales had four or five beers
several hours before the offense; thus, he did not believe that Morales was
intoxicated.Â  Id. at *7.Â  Morales sought to introduce expert testimony
to show that he Âwould not have been mentally or physically impaired because of
the alcohol burn-off rate.ÂÂ  Id.Â  When conducting its harm analysis, the First Court noted that the sole issue at trial was whether
Morales was driving while intoxicated.Â  See id. at *9.Â  MoralesÂs
Âprimary defense was that he could not have been driving while intoxicated
because such a long period of time had elapsed since his last drink.ÂÂ  Id. Â The expertÂs testimonyÂ would have Âsubstantially bolsteredÂ that defense.Â 
 Id. at *9-10.Â  Although the First Court did not believe that Morales
would have been acquitted Âbut for the trial courtÂs error,Â it could not say
with Âfair assurance
that the excluded
testimony would have had no effect, or but slight effect, on the juryÂs
consideration of [MoralesÂs] defense.ÂÂ  Id. at *10.Â  Morales was harmed
because the Âjury was not given an opportunity to hear testimony relevant to
[his] defense and assess its credibility along with the other evidence in the
case.ÂÂ  Id.Â  

As in Morales, we do not have a
fair assurance that the exclusion
of CarterÂs testimony did not influence the jury or had but a slight effect.Â  Because
we conclude that Ruffin was harmed by this error, we reverse the judgment and
remand this cause to the 

trial court for further proceedings
consistent with this opinion.

Â Â Â 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting with note)*

Reversed and
remanded

Opinion
delivered and filed September 23, 2009

Do not publish

[CRPM]

Â 

*Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray dissents.Â  A separate opinion will not issue.Â  The admissibility
of the evidence is dependent on a balancing test administered by the trial
court and even if erroneously excluded must be harmful.Â  Based on the precedent
of this Court, I cannot conclude the trial court erred in his decision to exclude
the evidence or that, if erroneous, the exclusion was harmful.)

Â Â Â Â Â Â Â Â Â Â Â  









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  On original
submission, we noted several facts supporting the verdict: (1) Ruffin had known
Brown for years, knew that she was a law enforcement officer, and acknowledged
her on the night of the offense; (2) some officers had activated the overhead
lights on their patrol cars at the time of their arrival at the scene; (3) the
headlights of some patrol cars illuminated the law enforcement markings on
other vehicles, as well as officers in uniform; and (4) at some point during
the night, Ruffin fired shots at both the officers and a police helicopter. Â See
Ruffin v. State, 234 S.W.3d 224, 227-28Â (Tex.
App.ÂWaco 2007, pet. granted).

Â 





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  Citing Peters
v. State, 31 S.W.3d 704Â (Tex. App.ÂHouston [1st Dist.] 2000, pet.
refÂd) and Wilkerson v. State, 766 S.W.2d 795Â (Tex. App.ÂTyler
1987, writ refÂd), Ruffin contends that exclusion of CarterÂs testimony was
harmful.Â  Because these cases involve testimony excluded at the punishment
phase, they are not particularly helpful.